**EQUITY MANAGEMENT II CORPORATION, Appellant,**

v.

**CARROLL CANYON ASSOCIATES, Appellee.**

In the Matter of CARROLL CANYON ASSOCIATES.

Civ. A. No. S86–0718(GN).
Bankruptcy No. 8507998 SC.

United States District Court,
S.D. Mississippi, S.D.

Jan. 22, 1987.

H. Bruce Jackson, Atlanta, Ga., and John M. Harral, Gulfport, Miss., for appellant.

Lynn Krogstad, Gulfport, Miss., for appellee.

## OPINION OF THE COURT

GEX, District Judge.

THIS CAUSE came before this Court on an appeal from the United States Bankruptcy Court for the Southern District of Mississippi pursuant to 28 U.S.C., Section 158 and Bankruptcy Rules 8001, *et seq.* The Court having considered the entire record presented on appeal and briefs of counsel finds that this Court has jurisdiction of the parties and the subject matter. The facts of this cause, though somewhat lengthy, are chronicled below:

The Debtor, Carroll Canyon Associates, (hereinafter CCA), purchased property in Gulfport, Mississippi, in early 1980. This property was known as the Racquet Club Apartments. The original plan was:

(1) that CCA would lease the property back to an affiliate of the seller and to Equity Management Corporation, (hereinafter EMC);

(2) that payments by the lessees would amortize the Deeds of Trust on the property; and

(3) result in a net positive payment each month to CCA.

Almost immediately, the lease went into default requiring CCA to begin active management of the property.

CCA is a general partnership established under the laws of California. Due to the

default in the lease and on other grounds, including fraud, CCA filed suit in the Superior Court of Los Angeles County, California. This suit will hereinafter be referred to as the California case. Named as defendants were the seller of the Racquet Club, various affiliates of the seller, EMC and its principals, John Ellis, Kent Lovelace, and Charles McReynolds.

While the California lawsuit was pending, notes and deeds of trust held by EMC on the Racquet Club became due. A Chapter 11 Bankruptcy was filed. The litigation in the California case, however, was allowed by the Bankruptcy Judge to 'proceed' in California State Court. In the filing of bankruptcy, CCA listed the claim of EMC as "disputed".

On November 25, 1985, the California case went to trial in the Superior Court of Los Angeles, California. The case continued until a stipulated settlement was reached on December 11, 1985, prior to the jury reaching a verdict. The settlement as reflected in the Court Reporters' transcript was as follows:

(A) EMC was to receive $350,000 plus interest at 12% on the $350,000;

(B) EMC was then to release its lien on the Racquet Club;

(C) EMC was to pay CCA $200,000 plus interest at 12% on the $200,000 from the date of the settlement; and

(D) EMC was to transfer title to a vacant 2 acre plot behind the Racquet Club Apartments to CCA.

This settlement was contingent only upon the jury returning a verdict in favor of plaintiff CCA. The jury did decide in favor of CCA. The settlement was dictated by attorneys for both CCA and EMC on the record before the California Superior Court Judge. A review of that transcript shows that Mr. Hennigan, CCA's counsel, explained the above referenced settlement which was agreed to by EMC's counsel, Mr. Taylor. Mr. Jackson, EMC's other counsel, was silent as to any clarification of Mr. Hennigan's and Mr. Taylor's comments. In addition to the money agreed to on settlement, the parties agreed to waive rights to costs, attorneys' fees and right to appeal. The parties also agreed to enter a stipulated settlement and "not a judgment on the fraud cause of action."

On December 9, 1985, Debtor's Bankruptcy counsel in Mississippi had filed a Plan of Reorganization and Disclosure Statement. The Bankruptcy Clerk sent to Debtor's Bankruptcy counsel in Mississippi a copy of an *Order Fixing Time for Hearing on Disclosure Statement Combined with Notice Thereof.* The Order was to be mailed to parties in interest along with a copy of the Plan and Disclosure Statement. On December 11, 1985, Debtor's counsel certified that the Order, Disclosure Statement and Plan were mailed to all creditors on the master address list including four (4) copies to EMC and/or its various counsel of record.

The *Order Fixing Time for Hearing on Disclosure Statement,* states in part:

> ORDERED that any holder of a claim or interest where claim or interest is listed as disputed contingent or unliquidated as to amount and who desires to participate in this case or to share in any distribution must file its proof of claim or interest on or before the date when any order is entered by the court approving the Disclosure Statement.

On January 24, 1986, a Hearing on Disclosure Statement was held before the Honorable Bankruptcy Judge. EMC failed to appear at this hearing. EMC failed to file any objection to the adequacy of the information contained in the Disclosure Statement.

On February 11, 1986, *The Bar Date,* the Bankruptcy Court entered the Order Approving Disclosure Statement. This was the last date on which EMC could file a Proof of Claim. Its claim, as previously mentioned, had been listed in the Debtor's schedules as "disputed."

On February 18, 1986, CCA's counsel mailed an Amended Proposed Plan of Reorganization reflecting the settlement of the California case to all creditors on the master address list. Again, four (4) copies went to EMC and its various counsel. Also included in the mailing were the Disclosure

Statement and the Court's *Order Approving Disclosure Statement and Fixing Time For Filing Acceptance or Rejection of Plan Combined with a Notice of Hearing.*

On March 12, 1986, a hearing on the Confirmation of Debtor's Amended Proposed Plan was held before the Honorable Bankruptcy Judge. The Confirmation Order reflects that appearances were made by counsel for the Debtor and GAMI. EMC did not appear.

After a hearing and a review of a certified copy of the transcript of the Stipulated Settlement in the California case, the Bankruptcy Judge found that the Amended Plan of Reorganization was in full compliance with the settlement agreement and with the provisions of the Bankruptcy Code. EMC had filed no objection or response to the Amended Plan. The Amended Plan required that liens be released upon payment by CCA to the lien-holder. Judge Roberts determined the amounts to be paid all creditors in the Confirmation Order.

Thereafter, EMC filed a Motion to Vacate the Order of Confirmation on the grounds that the terms of the California settlement were different from the terms reflected by the Confirmation Order. The hearing was set by the Court for April 23, 1986, but was continued by EMC with representations to the Court that the parties, EMC and CCA, were going before the California Superior Court for a determination of the terms of the settlement. EMC contended it was owed interest on $350,000 at 12% from date of default, not date of settlement.

On April 15, 1986, at a hearing before the California Superior Judge to determine the settlement terms, the Court ruled that CCA did not owe to EMC the unpaid interest on the underlying indebtedness since January 1985, but that the net amount owed as of December 11, 1985, was $350,000 with interest accruing at 12% from that date. Nevertheless, EMC continued to refuse to convey to the Debtor the 2 vacant acres behind the Racquet Club or to release its lien. Debtor deposited with the United States Bankruptcy Court the net sum owing to EMC after being informed by EMC's counsel that said sum was unacceptable to EMC.

On May 21, 1986, CCA filed a Motion to Enforce Settlement in the Bankruptcy Court and to require the satisfaction of EMC's liens against the Racquet Club Apartments. The Court heard oral arguments of EMC's counsel as to his version of the California settlement. The Court again reviewed the transcript of the settlement and the transcript of the California Superior Court Judge. The Bankruptcy Court found the position of EMC to be baseless and frivolous. The Court further found EMC's challenges to the Confirmation Order to be without merit. The Court determined that the lien of EMC had been satisfied. The Order of May 21, 1986, required EMC to immediately release its lien against CCA's property. EMC has appealed this Order as well as the Order of Confirmation.

The Court is of the opinion that this appeal is without merit.

Having reviewed numerous Court Transcripts, the Record from the Bankruptcy Court and Briefs of counsel, this Court is satisfied that a binding settlement was effectuated between CCA and EMC on December 11, 1985. The terms of that settlement have been considered and reviewed by two courts on at least two occasions each. (Excluding the review by this Court on appeal.) This Court is compelled to agree with the Bankruptcy Court and the Superior Court of California that EMC settled the lawsuit and agreed to receive $350,000, with interest from and after the date of settlement, rather than from some undetermined point in the past. Later efforts by EMC to reform or circumvent their bargain are to no avail. In *White Farm Equipment Co. v. Kupcho,* 792 F.2d 526 (5th Cir.1986), the Court said:

> We hold that once litigants have compromised their differences and stipulated to the compromise before the Court they may not then disavow compacts, they may not 'back and fill'.

See also *Rodriguez v. Via Metropolitan Transit Systems*, 802 F.2d 126 (5th Cir. 1986).

 Additionally, the Court finds that EMC has not complied with the Orders of the Bankruptcy Court nor with Bankruptcy Rule 3003. Because EMC was listed as a "disputed" claim on the Bankruptcy Schedules, it was required to file a proof of claim in order to vote or participate in CCA's Plan of Reorganization. See Bankruptcy Rule 3003(c)(2). The Court further notes that EMC's first objection to the Disclosure Statement or Plan of Reorganization came *after* the Court had confirmed the Debtor's Plan of Reorganization. EMC filed no response to the Plan, no objection, nor did it appear at the hearing before the Court on confirmation. EMC will not be allowed, at this late date, to assert any claims when it previously failed to do so as by law provided.

 Bankruptcy Courts are granted the specific authority to estimate claims or interest for the purpose of confirming a Chapter 11 Plan. See 28 U.S.C., Section 157(b)(2)(B). The Bankruptcy Judge established the claim of EMC based upon the Debtor's request that it be allowed to pay the settlement amount. Absent a proof of claim or objection by EMC to the Plan of Reorganization, the Bankruptcy Judge was eminently correct in his ruling.

 EMC has raised on appeal two objections to the Confirmation procedure. First, EMC contends that CCA was required to file a new Disclosure Statement with its Amended Plan of Reorganization. This Court finds that the filing of a New Disclosure Statement was not mandatory. See 11 U.S.C., Section 1127(c) which requires the proponent of a Plan modification to comply with Section 1125 if *new* acceptances are solicited. This Court notes that no acceptances were solicited for the original Plan. The only change between the original and Amended Plan was the inclusion in the Amended Plan of the amount of the stipulated settlement. This Court finds that the information previously furnished to EMC in the Disclosure Statement was sufficiently informative to relieve CCA of the necessity of filing a new Disclosure Statement with the Amended Plan. See *5 Collier on Bankruptcy*, Section 1127.03 (15th Ed.1985).

 Second, EMC contends that the dispute over the settlement terms should have been resolved in an adversary hearing pursuant to 11 U.S.C., Section 502(b). The Court finds that the failure of EMC to properly perfect its claim, as aforesaid, obviates the necessity for an adversary procedure. EMC had no allowed claim in this proceeding save for their inclusion by CCA in the Plan of Reorganization. To establish the prerequisite standing to maintain an adversary proceeding, EMC was required to file its proof of claim or a motion to establish the allowability of its claim on or before the Bar Date (February 11, 1986). This it failed to do. No claim was filed and EMC is, therefore, barred from asserting any claim through adversary proceeding or otherwise.

The Court finds that the decisions and orders of the United States Bankruptcy Judge in confirming CCA's Plan of Reorganization are supported by the facts and the law. This is not a meritorious appeal and as such, should be dismissed, with all costs to be taxed to the Appellant, as by law provided.

Separate Orders consistent with the Court's above findings will be entered by the Court.