**In re SHERWOOD SQUARE ASSOCIATES, Debtor.**

**FAIRFAX SAVINGS, a Federal Savings Bank, Movant,**

v.

**SHERWOOD SQUARE ASSOCIATES, Respondent.**

Bankruptcy No. 85–A–2037.
Motion No. 88M–0398.

United States Bankruptcy Court, D. Maryland.

June 9, 1988.

Deborah Hunt Devan, Steven M. Caplan, Nicole E. Porter, Weinberg & Green, Baltimore, Md., for Fairfax Savings, objecting secured creditor and movant.

Marcia K. Docter, Charles A. Docter, Loren L. Chumley, Docter & Docter & Salus, P.C., Washington, D.C., for debtor.

Lawrence D. Coppel, James A. Vidmar, Jr., Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, Md., for City of Westminster.

David F. Albright, Sr., Semmes, Bowen & Semmes, Baltimore, Md., for objecting unsecured creditor Louis Seidel, et al.

OPINION CONCERNING CERTAIN OBJECTIONS TO FOURTH AMENDED PLAN AND AS TO MOTION FOR RELIEF FROM STAY

E. STEPHEN DERBY, Bankruptcy Judge.

Submitted to the Court for confirmation is Debtor's Fourth Amended Plan

of Reorganization, as amended by Debtor's First, Second and Third amendments thereto and by Debtor's First, Second and Third amendments to the attached Modifications Memorandum, as further amended by technical corrections (together referred to as the "Plan"). The Modifications Memorandum amends Debtor's secured obligations which support industrial development revenue bonds issued by Westminster, Maryland and held by Fairfax Savings, a Federal Savings Bank ("Fairfax"). Since the amendments and corrections to the Fourth Amended Plan are sufficiently minor, or since they impact only Fairfax which has been fully involved and do not adversely impact any other creditor, it is not necessary to solicit new acceptances, i.e. a new rejection from Fairfax. Therefore, the Court accepts the amendments to the Fourth Amended Plan as the Plan under 11 U.S.C. § 1127(a), without requiring additional disclosure. 11 U.S.C. §§ 1127(c), 1125; 5 *Collier on Bankruptcy*, Para. 1127.03 (15th ed. 1985); *Equity Mgt. II Corp. v. Carroll Canyon Assoc.*, 73 BR 236, 239 (S.D. Miss.1987).

Objections to the Plan have been raised by Fairfax and by a group of entities which includes the two former general partners of Debtor, Charles Ellerin and Louis Seidel, et al. (herein "Ellerin").

Also before the Court is the Motion for Relief from Stay made by Fairfax based on Debtor's unilateral cessation of adequate protection payments after the Supreme Court's decision in *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, — U.S. —, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) on January 20, 1988.

The Debtor, Sherwood Square Associates, is a Maryland limited partnership. The Debtor's general partner is Sherwood Square Management Corporation, which was substituted as general partner effective March 31, 1986, after this case was commenced. Historic Westminster Associates Limited Partnership, also known as ISI V, ("Historic Westminster") is a limited partner of Debtor with a 98.4% interest, and it voted to remove the former general

partners of Debtor, Messrs. Ellerin and Seidel, in March, 1986. The general partner of Historic Westminster is Investment Services Incorporated ("ISI"), a syndicator, but approximately 92% of the interests in Historic Westminster are publicly held. ISI owns a 100% stock interest in AMP Associates, Inc., which in turns owns or controls Sherwood Square Management. Michael Dowd owns and is President of ISI, and he and his brother Roger are 2 of 3 directors of Sherwood Square Management Corporation, which is both Debtor's general partner and the operating manager of Debtor's real estate project.

This is a single asset case. The Debtor owns several parcels of improved real estate known as Sherwood Square in the City of Westminster which it has partially renovated and restored and which it has partially leased. Debtor has benefitted from certain historic tax credits and from tax free financing.

Debtor is indebted to Fairfax for two loans by the City of Westminster from proceeds of Maryland Industrial Development Revenue Bonds purchased by Fairfax which are secured by the Sherwood Square Project. Fairfax is both the Trustee for the revenue bond financing and the holder of the bonds.

The original principal amount of the first loan was $3,050,000 and of the second loan was $1,800,000. On November 11, 1985, the petition date, the principal amount outstanding was $2,644,824.46 on the first loan and $1,560,870 on the second, for a total principal amount owed of $4,205,694.46. Including prepetition accrued but unpaid interest, default interest and late charges, based on the testimony of Mr. Leiderman, Debtor's certified public accountant, the total amount due on the first loan as of the petition date was $2,876,532 and on the second loan $1,699,762, for a total amount due pre-petition of $4,576,294. In addition, Fairfax claims over $1.1 million dollars in unpaid post-petition interest, default interest and late charges, based on the uncontradicted testimony of its Controller, Mr. Sindler.

■ The value of the Sherwood Square project as of the Plan's proposed effective date is determined by the Court to be $5,000,000 for purposes of this proceeding. Therefore, the secured claim of Fairfax pursuant to 11 U.S.C. § 506(a) is $5,000,000, which includes some post-petition interest pursuant to 11 U.S.C. § 506(b). However, the balance of Fairfax's claim for post-petition interest, penalty interest and late charges is not allowable under 11 U.S.C. §§ 506(b) and 502(b)(2).

■ There was a substantial challenge mounted by Fairfax to the integrity of the $5,000,000 updated appraised value of Sherwood Square presented by Debtor's expert, William A. Payne, MAI, SREA, and to the assumptions and methodology on which his appraisal was based. Mr. Payne based his opinion of value primarily on a capitalization of income approach and a discounted cash flow analysis. Fairfax challenges the expense projections as too low, the income projections as too optimistic, and the capitalization or discount rates as too low. Use of higher expense, lower income, and higher capitalization and discount rates, however, would have resulted in a lower value for Fairfax's collateral.

Fairfax presented its own expert appraiser, M. Ronald Lipman, MAI, CRE, but Mr. Lipman was not asked by Fairfax, and did not offer, his own opinion as to the value of the Sherwood Square project. While accepting Mr. Payne's capitalization rate as on the low end of a reasonable range, he criticized Mr. Payne's appraisal as using projections which were inconsistent with those of Debtor, although he did not himself either adopt Debtor's projections or present his own. Mr. Lipman acknowledged that if one used Mr. Payne's approach, the Debtor's projections, and Mr. Lipman's estimate of the cost to complete the boiler and dryer buildings, the resultant value calculation would be $5,025,000. Recognizing that a real estate appraisal is an educated opinion of value dependent on several interdependent assumptions, that it is not scientific fact, that there is an inherent margin within which reasonable experts may disagree as to value, and that no contrary opinion of ultimate value was presented, this Court concludes $5,000,000 as proposed by Debtor is a reasonable value to use as a measure of Fairfax's secured claim for purposes of confirmation. Because Fairfax did not request its expert to provide an opinion of value, this Court is willing to draw in its discretion an adverse inference which supports its conclusion, namely, that Fairfax thought Mr. Lipman's opinion of value might have been lower than $5,000,000. *Cf. International Union (UAW) v. N.L.R.B.*, 459 F.2d 1329 (D.C. Cir.1972).

The Plan provides, *inter alia*, that Fairfax shall receive on account of its secured claim monthly payments which total the allowed amount of Fairfax's secured claim and which, Debtor contends, provide a present value at least equal to $5,000,000 as required by 11 U.S.C. §§ 1129(a)(7)(A)(ii) and 1129(b)(2)(A)(i)(II). However, the first 22 payments will not be made in cash, but rather will be made from application of adequate protection payments previously paid by the Debtor to Fairfax during the pendency of this Chapter 11 case. Based upon Debtor's own income and expense projections, the Court finds the Debtor will not generate sufficient cash flow to make the proposed payments to Fairfax in cash during this initial 22 month period, and thus the Plan is not feasible and would not satisfy the requirements of 11 U.S.C. § 1129(A)(11) unless Debtor is permitted to reapply these adequate protection payments to its Plan obligations to Fairfax.

Debtor relies on the *Timbers of Inwood Forest* case where the Supreme Court held that an undersecured creditor is not entitled to compensation under 11 U.S.C. § 362(d)(1) for the delay caused by the automatic stay in foreclosing its collateral, i.e. an undersecured creditor is not entitled to adequate protection payments as reimbursement for use of the proceeds of which it is deprived by the stay of its foreclosure rights (lost opportunity costs). The Supreme Court in *Timbers* thus resolved a conflict it acknowledged in the Courts of Appeals (—— U.S. at ——, 108 S.Ct. at 628) by effectively overruling our controlling decision from the Fourth Circuit in *Grundy*

*Nat. Bank v. Tandem Min. Corp.*, 754 F.2d 1436 (4 Cir.1985).

■ Debtor argues that this Court's prior Orders, which required Debtor to make adequate protection payments of $24,000 per month to Fairfax, were rendered a nullity by the *Timbers* decision. The basis for this argument is that this Court relied on *Grundy* in requiring Debtor to make adequate protection payments to Fairfax. According to Debtor, since Fairfax was not entitled to adequate protection payments, Debtor may apply them to its Plan obligations. The adequate protection orders, says Debtor, were interlocutory, were not subject even to a discretionary appeal in the face of *Grundy,* do not have the effect of *res judicata* or collateral estoppel, and may now be modified to correct an error of law on which they were premised by allowing the reapplication of the adequate protection payments as proposed in the Plan. By this reasoning, Debtor argues that the *Timbers* decision should be applied retroactively in this case under the principles enunciated in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).

Fairfax opposes Debtor's proposed application of the adequate protection payments since its efforts to lift the stay were denied because, *inter alia,* these payments were being made. It argues the adequate protection orders were final and not appealed. Consequently, Debtors may only obtain relief, if at all, under Federal Rule of Civil Procedure 60(b), which is made applicable by Bankruptcy Rule 9024. According to Fairfax, however, relief is not available to Debtor under Federal Rule of Civil Procedure 60(b) because an Order by consent resolved its initial motion for relief from the automatic stay, and because a change in a rule of law is not sufficient to warrant reopening a final judgment to permit retrospective relief.

The Court concludes the orders in this case which require adequate protection payments to be made by Debtor to Fairfax were final and subject to appeal. They terminated a matter and "... did not require further proceedings in the bankruptcy court other than continuation of the bankruptcy proceedings,...." *Grundy,* 754 F.2d at 1439.

■ Since the Supreme Court in the *Timbers* case, effectively overruled the *Grundy* decision which had been the controlling law in this Circuit, the question arises whether the holding in *Timbers* should be applied retroactively to provide Debtor relief in this case. This Court concludes *Timbers* should not be applied retroactively.

The retroactivity standards enunciated in the seminal case of *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed. 2d 296 (1971) were revisited in the recent Fourth Circuit case of *Grimes v. Owens–Corning Fiberglass Corp., et al.,* 843 F.2d 815 (4 Cir.1988).

The first *Huson* factor, as applicable here, for not applying a decision retroactively is if it established a new principle of law by overruling clear past precedent on which litigants may have relied. *Huson,* 404 U.S. at 106, 92 S.Ct. at 355. The *Grimes* opinion confirms that "... nonretroactivity is appropriate when a decision overrules 'clear circuit precedent on which the complaining party is entitled to rely.'" 843 F.2d at 819. This factor is applicable because *Timbers* effectively overruled *Grundy* on which the parties did rely in presenting their positions on the motions for relief from stay.

Having found the threshhold factor satisfied, it is necessary to consider the second and third factors enunciated in *Huson.* The second factor is whether retrospective application in this case will further or retard operation of the purpose and effect of the *Timbers* rule of law. *Huson,* 404 U.S. at 106–107, 92 S.Ct. at 355–56. This factor points toward retroactive application of *Timbers* because of the comprehensive statutory framework for allocating risks among creditors and fixing rights of creditors and debtors which the Supreme Court presented. However, in the particular circumstances of this case, the purpose and effect of the statutory scheme for these parties may be equally served by prospective application of the *Timbers* decision to

determine how the adequate protection payments are applied under the Plan.

The third *Huson* factor is the inequity which could result from retroactive application. *Huson,* 404 U.S. at 107, 108, 92 S.Ct. at 355–56. In *Grimes,* 843 F.2d at 820, the Fourth Circuit states this "... third factor requires weighing the equities," and it focuses on the equities to the parties rather than to the world of all [bankruptcy] litigants. Here the equities favor prospective application because Fairfax relied upon and benefitted from its receipt of adequate protection payments in framing its strategy over two years; and the Debtor relied on these payments to fend off Fairfax's efforts for relief from the automatic stay. To change this relationship retroactively would result in a windfall of cash to Debtor without having required Debtor to endure the apparently more rigorous examination of its prospects for effective reorganization suggested in the *Timbers* opinion than this Court applied under the *Grundy* rule.

■ Although the *Timbers* decision should not be applied retroactively in this case, Debtor could have moved for prospective relief pursuant to, for example, Bankruptcy Rule 9024 and Fed.R.Civ.P. 60(b)(5). A change in decisional law is sufficient ground to provide relief from a judgment prospectively, including where as here that judgment may have been entered by consent. *United States v. Swift & Co.,* 286 U.S. 106, 114–15, 52 S.Ct. 460, 462–63, 76 L.Ed. 999 (1932); *Jordan v. School Dist. of City of Erie, Pa.,* 548 F.2d 117 (3 Cir.1977); *Theriault v. Smith,* 523 F.2d 601 (1 Cir. 1975). *Cf. Patterson v. American Tobacco Co.,* 634 F.2d 744 (4 Cir.1980). However, Debtor did not seek prospective relief from the adequate protection orders of this Court. Rather, it unilaterally ceased making the payments, thus prompting Fairfax to seek relief from the automatic stay.

There is no legal justification for Debtor's unilateral act. The adequate protection order remains in effect unless it is modified, and *Timbers* does not say undersecured creditors may never be entitled to periodic payments as adequate protection. Such payments are expressly contemplated by 11 U.S.C. § 361(1). Each situation must be assessed on its own facts.

Consequently, Fairfax will be granted relief from stay unless Debtor promptly brings current the adequate protection payments which were awarded to Fairfax.

■ The post-confirmation effect of the adequate protection orders, however, must be evaluated by different standards. First, unlike a secured creditor's request for adequate protection where the Court might have some latitude to select what would be appropriate for it to require as adequate protection under the circumstances, in ruling whether to confirm a plan the Court must rule up or down whether what Debtor proposes satisfies the legal requirements of the Bankruptcy Code.

Second, as highlighted by the Supreme Court's discussion in *Timbers,* the purpose of adequate protection is to assure the secured creditor that it will ultimately realize the value of its collateral. The complementary requirement for confirmation, however, is that the secured creditor will, as of the effective date of the plan, receive payments equal to the present value of its collateral. The Supreme Court in *Timbers,* — U.S. at ——, 108 S.Ct. at 633, set forth this distinction as follows:

It is true that under § 1129(b) a secured claimant has a right to receive under a plan the present value of his collateral. This entitlement arises, however, not from the phrase "indubitable equivalent" in § 1129(b)(2)(A)(iii), but from the provision of § 1129(b)(2)(A)(i)(II) that guarantees the secured creditor "deferred cash payments ... of a value, *as of the effective date of the plan,* of at least the value of such [secured claimant's] interest in the estate's interest in such property." (Emphasis added.) Under this formulation, even though the undersecured creditor's "interest" is regarded (properly) as solely the value of the collateral, he must be rendered payments that assure him that value *as of the effective date of the plan.* In § 361(3), by contrast, the relief pending the stay need only be such *"as will result in the realization ... of the indubitable equivalent"* of the collateral. (Emphasis added.) It is obvious (since § 361 and 362(d)(1) do not entitle the secured creditor to immediate payment of the principal

of his collateral) that this "realization" is to "result" not at once, but only upon completion of the reorganization. It is *then* that he must be assured "realization ... of the indubitable equivalent" of his collateral. To put the point differently: similarity of outcome between § 361(3) and § 1129 would be demanded only if the former read "such other relief ... as will give such entity, *as the date of the relief,* the indubitable equivalent of such entity's interest in such property."

There is nothing in the adequate protection Orders dated January 31, 1986, June 6, 1986 (consent to additional assurances), July 1 and October 7, 1987 (denying relief from stay) which precludes the Court from finding that the monthly $24,000 adequate protection payments were to assure Fairfax as an undersecured creditor that it would ultimately realize the value of its collateral. The Court relied on *Grundy* to determine the amount of the payments to which Fairfax as an undersecured creditor was entitled for adequate protection; but regardless what may have been assumed, it did not determine how such payments were to be applied by Fairfax. In fact, Fairfax appears itself to have applied these adequate protection payments in a manner inconsistent with the *Grundy* decision. Rather than paying itself for its loss of use of the value of its collateral from the time it could have been realized, Fairfax applied the payments in lump sums toward post-petition contract interest accruals, first on one loan and then on the other in alternate months.

The issue is thus still open in this case as to what the payments were to adequately protect. The *Timbers* case answers the question. As quoted above, the adequate protection payments are intended to provide Fairfax protection "... such 'as will result in its realization' " of the value of its collateral "... upon completion of the reorganization." *Timbers,* — U.S. at —, 108 S.Ct. at 633. Adequate protection payments are not reimbursement for the use value of collateral. *Id.*

Bankruptcy Code Section 1129(b)(2)(A)(i)-(II) guarantees Fairfax, as a secured creditor, the value of its collateral at least to the extent of "... deferred cash payments ... of a value, as of the effective date of the plan, of at least the value of [its] interest in [Sherwood Square]." Under the Plan, Debtor proposes to credit the adequate protection payments made previously against its deferred cash payment obligations until exhausted, rather than to make new payments in cash to Fairfax. Debtor's proposed application of adequate protection payments under the Plan is approved by the Court as a matter of methodology, and the objection of Fairfax is overruled. The purpose of the adequate protection payments was to secure Fairfax's right to receive the present value of its collateral, and the application of this collateral to this present value obligation is the equivalent of a cash payment.

Whether the amount of Debtor's proposed deferred cash payments on account of Fairfax's secured claim is sufficient is a separate issue which is addressed in the Additional Findings and Conclusions Concerning Objections to Fourth Amended Plan which are filed contemporaneously herewith.

An Order will be entered separately which implements the conclusions reached here and in the Additional Findings and Conclusions.