In re Richard DeFRANCO, Debtor.

Richard DeFRANCO, Plaintiff,

v.

RALPH D. KAISER CO.,
INC., Defendant.

Bankruptcy No. 84–00477.
Adv. No. 88–0018.

United States Bankruptcy Court,
District of Columbia.

Oct. 6, 1988.

Gary A. Rosen, Bethesda, Md., for plaintiff.

Patrick J. Kearney, Washington, D.C., for defendant.

## SUPPLEMENTAL OPINION

S. MARTIN TEEL, Jr., Bankruptcy Judge.

This adversary proceeding was tried on July 25, 1988. This opinion supplements the Court's opinion announced at a July 28, 1988 hearing. At issue is the determination of the rights of Ralph D. Kaiser Co., Inc. ("Kaiser") arising from approximately $300,000 in promissory notes secured by a deed of trust against certain properties of the plaintiff, Richard DeFranco, the Debtor in this bankruptcy case.

### 1. *Section 552(b) Issue*

Of the real properties covered by the deed of trust only one—a property known as 1120–24 Congress Street, N.E., Washington, D.C.—is still owned by the Debtor. The Debtor leases that property to Chilly Auto Repair. Kaiser seeks a determination that its security interest extends to the rents under the lease. Kaiser concedes that it has no allowed secured claim against the property itself because the Small Business Administration ("SBA") has a lien thereon for in excess of $900,000, an amount vastly exceeding the value of the property and all other properties by which the SBA is secured.

The deed of trust provides that the Debtor, as Grantor, "assigns to Beneficiary all leases, rents, income and profits from [the] premises and all portions thereof subject to a license in Grantor to receive and apply the same to the benefit of the premises prior to default hereunder." There is no evidence that the SBA's security interest extended to rents. For the reasons set forth below, this Court need not decide whether Kaiser undertook the necessary steps to effect a security interest in rents. *See In re Village Properties, Ltd.,* 723 F.2d 441 (5th Cir.), *cert. denied,* 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984).

■ The general rule is that a pre-petition security interest does not extend to post-petition property. 11 U.S.C. Section 552(a). As an exception, Section 552(b) provides in relevant part that:

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to ... rents ... then such security interest extends to such ... rents ... acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

Mr. Kaiser's reliance on this section is unavailing because his security interest in the subject real property is void and hence of no effect. Under 11 U.S.C. Section 506(a) an allowed claim is a secured claim "to the extent of the value of such creditor's interest in the estate's interest in such property" and Kaiser's security interest in this case has no value because of the prior lien of the SBA. Under 11 U.S.C. Section 506(d) a lien that "secures a claim against the debtor that is not an allowed secured claim ... is void," except in certain circumstances not applicable here. Under Section 552(b) there must be a "security interest" extending to the subject real property. Because Kaiser's security interest in the real property is void, Section 552(b) does not apply.

The exceptions enumerated in the opening clause of Section 552(b) ought not be read as precluding Section 506(d) from making Section 552(b) inapplicable. The legislative statements of the floor managers to the Bankruptcy Reform Act of 1978 indicated that Section 552(b) "is explicitly subject to other sections of title 11. For example, the trustee or debtor-in-possession may use, sell, or lease ... rents ... under Section 363." 124 Cong.Rec. H11,-097–98 (daily ed. Sept. 28, 1978); S17,414 (daily ed. Oct. 6, 1978). This language does not indicate an intention that the opening

clause of Section 552(b) would, by omitting reference to Section 506(d), preclude a determination that a lien voided under Section 506(d) cannot satisfy the requirement of the later clause of Section 552(b) that "the security interest ... extends to property of the debtor acquired before the commencement of the case." This reading is consistent with the intent of Section 552(b) to permit a secured creditor to have the fruits of the underlying collateral if the creditor bargained for them. Property—such as rentals or accounts receivable—that comes into existence after the filing of the petition, is normally not available to satisfy the claims of creditors holding a security interest only in such post-petition income. Kaiser should be in no better position than a creditor who never had a lien upon the Debtor's real property itself but who had a security interest in future rents. By virtue of Section 552(a), the latter creditor would clearly have no right to enforce its security interest against the future rentals. There is no reason why Kaiser should be allowed to enforce its security interest against the rentals when its underlying security interest against the real property is itself a nullity.

In any event, Section 552(b) allows its general rule to be altered "based on the equities of the case." In *In re Delbridge*, 61 B.R. 484, 491 (Bankr.E.D.Mich.1986), the Court stated:

> The rule is easy to state. The lender is entitled to the same percentage of the proceeds of the post-petition [production] as its capital contribution to the production of the [income] bears to the total of the capital and direct operating expenses incurred in producing the [income]. ... Very simply, the larger is the lender's capital contribution to the venture, the larger its share of the production ought to be.

There has been no capital contribution by Kaiser to the production of these rental proceeds. Applying the *Delbridge* rationale, the Court must conclude that the equities of the case dictate that Kaiser not be allowed a secured claim against the post-petition rentals.

### 2. *Effect of Adequate Protection Payments*

By way of a stipulation and consent order, the Debtor agreed to make adequate protection payments from the Randolph Street property to Kaiser. Payments of $12,000 were made to Kaiser pursuant to that stipulation and consent order. The Debtor maintains that the $12,000 must be applied to the pre-petition debt of Kaiser. The Court rejects that contention. Adequate protection payments are generally designed to guard against depreciation of property. Prior to the decision in *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc.*, 484 U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), some courts also allowed adequate protection payments for the purpose of compensating an undersecured creditor for the time value of the money the creditor would have received were the creditor allowed to foreclose upon the property. In either event, adequate protection payments ought not be applied to the pre-petition debt. *See In re Sherwood Square Assoc., Inc.*, 87 B.R. 388 (Bankr.D.Md.1988). Accordingly, Kaiser has an allowed unsecured claim in this case of $3,659.45. Whether Kaiser's claim is entitled to administrative status under 11 U.S.C. Sections 507(b) and 503(b) was not framed by the pleadings and thus will not be treated as an issue properly before the Court.

### Conclusion

Based on the foregoing, the Court concludes that Kaiser is not a holder of an allowed secured claim. Rather, the Court holds that Kaiser has an allowed unsecured claim in the amount of $3,659.45. The holding is without prejudice to the right of Kaiser to pursue a request that it receive administrative priority status for that claim under 11 U.S.C. Sections 507(b) and 503(b). An appropriate order will be entered.