**In re COLUMBIA OFFICE ASSOCIATES LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 91–5–5085–JS.**

United States Bankruptcy Court, D. Maryland.

Sept. 9, 1994.

200

Jeffrey L. Tarkenton, David & Hagner, P.C., Washington, DC, for Columbia Office Associates Ltd. Partnership.

E. Bernard Justis, Brooke Schumm, Semmes, Bowen & Semmes, Baltimore, MD, for State Farm Life Ins. Co.

### ORDER DETERMINING SECURED CLAIM OF STATE FARM LIFE INSURANCE COMPANY

JAMES F. SCHNEIDER, Bankruptcy Judge.

This matter came before this Court upon the motion of State Farm Life Insurance

Company ("State Farm") to determine its secured claim in the above referenced case. This opinion holds that State Farm's secured claim is equal to the amount of indebtedness owed under the Deed of Trust Note and its modifications, other costs as envisioned in the Note and its modifications, and postpetition interest, up to the sum of the values of the real property and those net rents which have accumulated in the debtor's debtor-in-possession accounts.

*FINDINGS OF FACT:*

1. This chapter 11 case commenced before the Court on August 7, 1991, with the filing of a voluntary petition by the debtor, Columbia Office Associates Limited Partnership.

2. The parties have stipulated to the following facts:

a. Debtor's sole parcel of real estate is improved by three office buildings located at 9801, 9821 and 9841 Broken Land Parkway, Columbia, Maryland. The complex is generally known as Lakeview I.

b. Pursuant to the Deed of Trust dated September 17, 1981, partially modified by the Partial Release dated July 28, 1982, State Farm Insurance Company ("State Farm") holds a first priority lien against the debtor's real property.

c. The debtor executed an Assignment of Lease and an Assignment of Rents—Conditional on September 17, 1981. These documents were also amended by the Partial Release of each dated July 28, 1982.

d. Financing statements were properly filed among the land records of Howard County, the Maryland subdivision in which the real property is situated.

e. The debtor defaulted on its obligations under the loan documents by failing to make a payment due on June 1, 1991.

f. The debtor made a $100,000 postpetition payment to State Farm which was derived from the rents, profits, and income generated by the real estate.

g. On the date of the filing of the bankruptcy petition, the fair market value of the real property was $4,200,000. On the same date, under the loan documents, the debtor owed State Farm $4,286,503.67, which consisted of $4,098,104.52 in principal, $151,402.45 in interest, and $36,996.70 in default interest, attorneys' fees and court costs.

h. The fair market value of the real property was $4,250,000 as of August 1, 1993. To date, that value has not changed. The debtor currently holds in its debtor-in-possession accounts approximately $671,-276.35 in net rents generated by the real estate.

i. As of December 15, 1993, State Farm's claim under the loan documents totalled $6,067,748.78, which included expenses of $44,951.50, post-petition interest of $1,353,059.79 and default interest of $383,233.82.

*CONCLUSIONS OF LAW:*

1. "Value in the context of § 506 is a fluid concept." *In re Broomall Printing Corp.,* 131 B.R. 32, 34 (Bankr.D.Md.1991). Section 506(a) of the Bankruptcy Code provides that value "shall be determined in light of the purpose of the valuation and the proposed disposition or use of such property." 11 U.S.C. § 506(a) (1993).[1] The value of collateral may therefore vary during the pendency of a bankruptcy case.

■ 2. In the instant case, the valuation of State Farm's claim is being determined in

---

1. In full, Section 506(a) of the Bankruptcy Code states the following:

§ 506. Determination of secured status.

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

*Id.*

the context of the confirmation of the debtor's Chapter 11 plan. In that connection, Section 1129(b)(2)(A)(i)(II) of the Bankruptcy Code requires that a secured creditor receive "fair and equitable treatment." That is, "that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property." *Id.*

Considered in context, the purpose of this valuation is to determine State Farm's secured claim in order to ensure that State Farm receives a payment stream under a proposed plan equivalent to the present value of the collateral as of the effective date of the plan. Therefore, value should be determined as of the effective date of the plan. *Broomall,* 131 B.R. at 34.

■ 3. The amount of State Farm's allowed secured claim will depend upon the property rights of State Farm in the net rents that have accumulated during the pendency of this bankruptcy case. "Property interests are created and defined by state law." *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136, 141 (1979). Because the real estate in question is situated in Maryland, it is appropriate to apply the law of Maryland in order to determine the rights of State Farm in the accumulated rents which are proceeds of the real estate.

■ 4. The statutory rights of a mortgagee to rents in Maryland are set forth in Section 3–204 of the Maryland Real Property Code as follows:

§ 3–204   Interest in rents or profits.

An interest created by a deed granting, assigning, or otherwise transferring an interest in rents or profits arising from property is perfected upon recordation as provided in this title:

(1) Regardless of whether, by its terms or otherwise, the grant, assignment, or transfer is operative immediately, or upon the occurrence of a specific event, or under any other circumstances; and

(2) Without the grantee, assignee, or transferee having to make any affirmative demand or take any further affirmative action.   (1992, ch. 596.)

Md.Real Prop.Code Ann. § 3–204 (Supp. 1993). Thus, it appears from the statute that the conditional nature of an assignment of rents is irrelevant to the right of a mortgagee to claim an interest therein, and demand is unnecessary in order for a mortgagee to perfect an assignment in rents.

5. In this case, State Farm had a prepetition, perfected security interest in rents by virtue of its properly-filed financing statements.[2]

6. In general, property acquired by the debtor postpetition is not subject to a security interest created by agreement prepetition. 11 U.S.C. § 552(a) (1993). However, rents derived from property in which there is a prepetition security interest fall into the exception carved out by Section 552(b) of the Bankruptcy Code, which states as follows:

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, produce, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

*Id.*

■ 7. By virtue of Section 552(b), the perfected prepetition security interest of State Farm extends to the net rents accumulated by the debtor postpetition. Therefore, the accumulated rents must be added to the real property in the valuation of State

2. Moreover, the parties have stipulated that the   interest of State Farm in rents is perfected.

Farm's secured claim.[3] *In re Vermont Inv. Ltd. Partnership,* 142 B.R. 571, 573 (Bankr. D.C.1992) (allowed secured claim is increased by postpetition rents); *In re Flagler-at-First Associates, Ltd.,* 114 B.R. 297, 302 (Bankr. S.D.Fla.1990) (secured creditor's claim includes excess rents generated during the chapter 11 case).

■ 8. However, Section 552(b) of the Bankruptcy Code contains a limitation to the security interest in postpetition rents. The security interest in postpetition rents only "extends to such … rents … acquired by the estate after the commencement of the case **to the extent provided by such security agreement** and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise." 11 U.S.C. § 552(b) (1993) (emphasis added). Therefore, the security agreement, consisting of the Assignment of Rents—Conditional and the Deed of Trust Note and its modifications, must be considered.

■ 9. The Assignment of Rents—Conditional required that the rents be applied as follows:

The mortgagee in the exercise of the rights and powers conferred upon it by this assignment of rents shall have full power to use and apply the avails, rents, issues and profits of the premises to the payment of or on account of the following, in such order as the mortgagee may determine:

(a) To the payment of the operating expenses of said property, including cost of management and leasing thereof (which shall include reasonable compensation to the mortgagee and its agent or agents, if management be delegated to an agent or

agents, and it shall also include lease commissions and other compensation and expenses of seeking and procuring tenants and entering into leases), establish claim for damages, if any, and premiums on insurance hereinabove authorized;

(b) To the payment of taxes and special assessments now due or which may hereafter become due on said premises;

(c) To the payment of all repairs, decorating, renewals, replacements, alterations, additions, or betterments, and improvements of said premises, including the cost from time to time of installing, replacing refrigeration and gas or electric stoves therein, and of placing said property in such condition as will, in the judgment of the mortgagee, make it readily rentable;

(d) To the payment of any indebtedness secured by the described Deed of Trust or any deficiency which may result from any foreclosure sale.

Assignment of Rents—Conditional [Exhibit E to Joint Stipulation of Facts].

The Deed of Trust secured the Deed of Trust Note (the "Note"). The Deed of Trust Note, among other things, provided for interest of 14% per annum, with additional interest in the event of default. While the Note provided for various costs and charges, it did not provide for attorneys' fees in the event of default.

10. Because the Note contemplated interest and other costs, State Farm's allowed secured claim shall equal the amount of indebtedness owed under the Note and its modifications, other costs as envisioned in the Note and its modifications, and postpetition interest up to the value of the sum of the real estate and those net rents which have

---

**3.** This conclusion is further supported by the income method used by appraisers in affixing a value to income-producing property. *In re Landing Associates,* 122 B.R. 288, 297 (Bankr. W.D.Tex.1990) discussed this concept as follows:

The income approach measures the **ability** of the property to produce a return on investment (via an income stream) that would justify a buyer's paying the indicated market value to own the property. The right to specific rents **prior** to ownership of the property, conferred by an assignment of rents, is **a priori** not

calculated into this value. It is thus possible for appraisers to conclude that income-producing property has the same value at two different points in time even though income has been generated in the interim. That is what happened here. It could not have happened if the value of income-producing property were merely a function of its stream of income. The income approach more precisely values **the ability to produce income,** rather than the income itself.

*Id.*

accumulated in the debtor's debtor-in-possession accounts.

■ 11. The $100,000 payment made to State Farm may not be credited towards payments under a proposed plan to the extent that the payment was derived from net rents. Each dollar of net rent increased State Farm's allowed secured claim to the extent that postpetition interest and costs came due under the loan documents. Because the total amount due under the loan documents postpetition exceeded $100,000, the payment of the net rents reduced State Farm's allowed secured claim, dollar for dollar, resulting in a "wash." *See In re Vermont Inv. Ltd. Partnership*, 142 B.R. 571, 573 (Bankr.D.C.1992), *In re Flagler-at-First*, 114 B.R 297, 302 (Bankr.S.D.Fla.1990).

■ 12. The numerous cases cited by the debtor which hold that adequate protection payments may be credited towards plan payments, including *Fairfax Sav. v. Sherwood Square Assocs. (In re Sherwood Square Assocs.)*, 87 B.R. 388, 393 (Bankr.D.Md.1988), are inapplicable to the facts of this case. This Court has previously stated that "the purpose of adequate protection is to assure the secured creditor that it will ultimately realize the value of its [interest in] collateral." *In re Broomall Printing Corp.*, 131 B.R. 32, 34 (Bankr.D.Md.1991), citing *Sherwood Square*, 87 B.R. at 393. Upon confirmation the secured creditor must receive payments equal to the present value of its collateral. *Id.* Thus, where the property has not depreciated, the adequate protection payments become unnecessary and may be credited towards payment under the plan. *Id.* at 394. Here, there were no adequate protection payments that could be applied to a plan. Moreover, the keystone of this case is the applicability of Section 552(b) of the Bankruptcy Code to augment State Farm's claim.

ORDER ACCORDINGLY.