**In re HEMISPHERE INTERNATIONAL CENTER, INC., Debtor.**

**Bankruptcy No. 84–02385–BKC–SMW.**

United States Bankruptcy Court, S.D. Florida.

April 10, 1986.

Lawrence A. Gordich, Miami, Fla., for debtor.

John Watson, Los Angeles, Cal., for California Federal Sav. and Loan Ass'n.

## ORDER ON DEBTOR'S MOTION FOR ORDER DETERMINING VALUE OF SECURED CLAIM, SURCHARGING SECURED CLAIMANT, DETERMINING AMOUNT OF OUTSTANDING DEBT AND CLARIFYING ALLOCATION OF ADEQUATE PROTECTION PAYMENTS TO OUTSTANDING DEBT AND CREDITOR'S MOTION FOR ORDER INSTRUCTING DEBTOR-IN-POSSESSION TO DISBURSE SALE PROCEEDS AND APPLICATION FOR INTERIM COMPENSATION AND REIMBURSEMENT OF COSTS

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come before the Court upon the Debtor's Motion for Order Determining Value of Secured Claim, Surcharging Secured Claimant, Determining Amount of Outstanding Debt and Clarifying Allocation of Adequate Protection Payments to Outstanding Debt ("Debtor's Motion") and the Motion for Order Instructing Debtor-In-Possession to Disburse Sale Proceeds to California Federal ("CalFed's Motion to Disburse") and the Application for Interim Compensation and Reimbursement of Costs ("CalFed's Application for Attorneys Fees and Costs") and the Court having considered said Motions and Application, observed the candor and demeanor of the witnesses, heard the arguments and representations of counsel and being otherwise fully advised in the premises, does hereby enter the following findings of fact, conclusions of law and order:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Prior to, and during the present Chapter 11 case, Hemisphere International Center, Inc. (the "Debtor") was involved in a serious lease dispute, ("Lease Dispute") with its largest tenant, Hemisphere National Bank ("National"). California Federal Savings and Loan Association ("CalFed") was aware of this dispute prior to lending any sums to the Debtor.

Notwithstanding the Lease Dispute, on September 20, 1984, CalFed extended a loan to the Debtor in the original principal amount of $2,550,000.00. Simultaneously therewith, the Debtor executed a promissory note, mortgage and security agreement, UCC-1 financing statement and an assignment of leases, rents and profits to evidence and secure the debt.

On December 14, 1984, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code ("Petition"). Thereafter, CalFed filed various motions alleging lack of adequate protection of its secured interest in the subject property and the Court entered an order directing the Debtor to make certain adequate protection payments ("Payments"), however, the Court did not make any finding in connection with the value of CalFed's collateral. The Debtor made six payments in the total amount of $60,000.00 to CalFed.

After numerous settlements were attempted, National and the Debtor were unable to reach an amicable resolution of the Lease Dispute. Moreover, prospective purchasers declined to buy the subject property unless the lease dispute was resolved.

As a result of the foregoing dilemma, National filed a complaint against the Debtor [Adv. No. 85-0174-BKC-SMW-A] which sought various forms of relief, including a declaratory judgment determining the rights and duties of the respective parties and the proper amount of rent due under the lease.

The Debtor filed an answer and counterclaim which sought various forms of relief, including a declaratory judgment determining that National had breached the lease, evicting National from the premises and awarding damages to the Debtor.

CalFed was permitted to intervene after it asserted that the National lease was a

major part of its collateral and that it must be allowed to protect said interest.

Extensive discovery was conducted, numerous responsive pleadings were filed and the matter was tried before the Court. After the trial, the parties agreed to the entry of the stipulation of settlement and agreed order, ("Stipulation") which was entered by the Court on July 8, 1985.

Approximately one year after the petition initiating this Chapter 11 case was filed, and approximately six months after the resolution of the Lease Dispute, the Debtor and its attorneys negotiated and obtained the Court's approval of the sale of the subject property.

Following the sale, the Debtor paid CalFed the sum of $2,490,000.00, in addition to the previously mentioned adequate protection payments ($60,000.00). Therefore, the Debtor has made post-petition payments to CalFed in the total amount of $2,550,000.00. (A sum equal to the original principal amount of the debt).

CalFed's Application for Attorneys' Fees and Costs and Motion to Disburse Sale Proceeds and the Debtor's Motion under Bankruptcy Code Section 506 were brought before the Court upon a consolidated hearing ("Hearing"). The Court heard all the testimony and examined all the evidence presented and, with the agreement of the parties, the Court directed that all legal and closing arguments be presented to the Court in memoranda of law.

At the Hearing, CalFed presented the testimony of an appraiser who testified that he was an employee of CalFed and that he opined that the property had a fair market value of $3,375,000.00 on June 15, 1984.

However, the appraiser admitted that he had no opinion concerning the value of the subject property on December 14, 1984 (the date the petition was filed) or at any other time during the pendency of the present case.

Similarly, CalFed never presented any other evidence whatsoever in connection with the value of the subject property dur-ing the pendency of this case nor did they present any evidence concerning whether the value of the property had changed in the approximate six month time period between the date of the appraiser's pre-petition evaluation and the date the petition was filed. Further, neither the appraiser's verbal opinion nor his written Appraisal takes into account the negative impact of the lease dispute upon the value of the subject property.

In that regard, CalFed did present evidence that the property was ultimately sold for the sum of $3,525,000.00 and that Schedule B–1 of the Debtor's original schedules and statements lists the value of the property as $4,550,000.00.

Additionally, CalFed asked the Court to take judicial notice of the Debtor's response to CalFed's motion for relief from stay and the interrogatories which were propounded in connection therewith. Specifically, CalFed represented to the Court that the Debtor's response to the motion and answers to the interrogatories stated that there was an abundance of equity in the property. Moreover, CalFed asked the Court to consider the Debtor's answer to interrogatory no. 6, in which the Debtor stated that the property had a market value of $4,200,000.00.

CalFed also presented the testimony of a bank employee who testified as to the amount of interest ($398,473.80) CalFed asserts it is owed by the Debtor and stated that the original principal amount of the loan was $2,550,000.00.

The Debtor presented the testimony of David Bishop who testified that he was a professional appraiser with approximately 40 years experience and that he had conducted an appraisal on the portion of the subject property, which is occupied by National and which was owned by the Debtor (the "National Portion of the Subject Property").

Mr. Bishop testified that his appraisal took into account the negative impact of the Lease Dispute on the value of the property. Mr. Bishop further stated that he

believed that the National Portion of the Subject Property was worth $800,000.00 on December 14, 1984. Finally, Mr. Bishop stated that the Lease Dispute problem had probably prevented the subject property from being sold at a reasonable fair market price and that the ultimate resolution of the Lease Dispute materially increased the value of the subject property.

The Debtor next presented the testimony of Antonio Alonso, who had previously made an offer to purchase the National Portion of the Subject Property. Mr. Alonso stated that he personally believed that the National Portion of the Subject Property was worth $800,000.00 on the date his offer was made.

The Debtor's final witness was the President of the Debtor, Sergio Velikopoljski. Mr. Velikopoljski testified that he had conducted certain calculations and computations in connection with the total amount of property upon which CalFed had a security interest and that said property had a total value of $2,123,434.43 as of December 14, 1984.

In addition to the foregoing valuations, Mr. Velikopoljski testified that necessary expenses and costs in the total sum of $384,235.43 had been expended to protect, preserve, dispose of and enhance CalFed's collateral.

CalFed requests an order directing the Debtor to pay its attorneys' fees and costs in the amount of $31,158.71 and post petition interest in the amount of $398,473.80.

The Debtor seeks an order determining that the Debtor has overpaid CalFed the sum of $426,565.57 (which the Debtor asserts is the difference between the total amount of post petition payments made to CalFed [$2,550,000.00] and the valuation of the subject property on the date the petition was filed [$2,123,434.43]) and that $426,565.57 shall be returned to the Debtor.

Alternatively, the Debtor seeks an order which surcharges CalFed in the amount of $384,235.43 as the reasonable and neces-sary expenses to protect, preserve, dispose of and enhance CalFed's collateral.

Both CalFed and the Debtor have made requests for relief pursuant to Bankruptcy Code Section 506. Bankruptcy Code Section 506(a) provides:

§ 506. Determination of secured status

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, *is a secured claim to the extent of the value of such creditor's interest* in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and *is an unsecured claim to the extent that the value of such creditor's interest* or the amount so subject to setoff *is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property*, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. [emphasis added]

11 U.S.C. § 506(a).

The above quoted passage contemplates that a secured claim which is examined by the Bankruptcy Court under Section 506 may be bifurcated into separate secured and unsecured claims in accordance with the Court's finding in connection with the value of the subject collateral. Additionally, the determinations will be made on a case-by-case basis and a determination at one point of a case will not be binding at another point of the same case.

Moreover, the legislative history to Section 506(a) provides in pertinent part:

While courts will have to determine value on a case-by-case basis, this subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property ... To illustrate, a valuation early in the case in a proceeding under sections 361–363 would not be binding upon the debtor or credi-

tor at the time of confirmation of the plan ...

House Report No. 95–595, 9th Cong., 1st Sess. 356 (1977), Senate Report No. 95–989, 95th Cong., 2nd Sess. 68 (1978), U.S.Code Cong. & Amin.News 1978, pp. 5787, 5854, 6312.

■ Accordingly, the Court rejects CalFed's argument that the Debtor is bound by its response to CalFed's motion for relief from stay, the response to the interrogatories which were propounded in connection therewith, or the original scheduled value of the property.

The issue concerning CalFed's request for post petition interest, attorneys' fees and costs is controlled by Bankruptcy Code Section 506(b), which provides:

> (b) To the extent that an allowed secured claim is secured by property the value of which, *after any recovery under subsection (c)* of this section, *is greater than the amount of such claim*, there shall be allowed to the holder of such claim, *interest* on such claim, and any reasonable *fees, costs, or charges* provided for under the agreement under which such claim arose. [emphasis added]

11 U.S.C. § 506(b).

■ Thus, if the value of the collateral is greater than the amount of the allowed secured portion of the claim, plus any surcharge under subsection (c), the Court may award attorneys' fees and post petition interest.

Therefore, the Court must also consider subsection (c) in connection with CalFed's request for post petition interest, attorneys' fees and costs as well as the Debtor's alternative request to surcharge CalFed. Bankruptcy Code Section 506(c) provides:

> (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit of the holder of such claim.

11 U.S.C. § 506(c).

The Court has considered the Debtor's argument that CalFed was undersecured at the time the petition initiating the present case was filed and is not entitled to post-petition interest or attorneys' fees. Additionally, the Court has considered subsections (a) and (b) of Section 506 and the cases cited by the Debtor in support of its position.

The Debtor's argument fails to recognize that the property has generated post-petition income, which was generated through the collection of rents and that CalFed has a secured interest in the rents as evidenced by the assignment of leases, rents and profits ("Assignment"). Moreover, the Debtor's own Motion requires the Court to evaluate all of CalFed's collateral, which would include the Assignment.

The Debtor's argument also fails to consider that the subject property was ultimately sold for a sum [$3,525,000.00] sufficient to satisfy CalFed's total claim, including principal, post-petition interest, attorney's fees and costs. The United States Court of Appeals for the First Circuit has considered this same issue and stated:

> To deny such a creditor postpetition interest, when the amount of the security is sufficient to cover both the principal and interest due, would undermine the faith of lenders in the efficacy of credit arrangements. Such a loss of confidence could result in a curtailing of the free flow of capital in our economy.

*In re Boston and Maine Corp.*, 719 F.2d 493 at 497 (1st Cir.1983); *See Also United States v. Harrington*, 269 F.2d 719 (4th Cir.1959); *In re Kerber Packing Company*, 276 F.2d 245 (7th Cir.1960).

■ Accordingly, notwithstanding the evidence that CalFed was undersecured on the date the petition was filed, the Court rejects the Debtor's first argument and holds that CalFed is entitled to post-petition interest in the amount of $398,473.80 and attorneys' fees.

■ In connection with CalFed's Application for Attorneys' Fees and Costs and the Debtor's *ore tenus* objection thereto, the Court has considered each of the factors

that govern the reasonableness of fees as set forth in *Matter of First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.1977) and the other cases cited by CalFed and the Debtor. The Court finds and concludes that the legal services rendered by CalFed's attorneys were of superior quality and necessary to properly represent CalFed. Further, the amounts requested by CalFed as reimbursement for attorneys' fees and costs are reasonable and are granted by the Court in the combined amount of $31,158.71. Specific findings and a statement of the facts and considerations supporting each of these conclusions have been omitted in the interest of brevity but will be prepared and filed at the request of any party if received by the Court within ten (10) days after the entry of this Order.

The Court has also carefully considered the testimony, exhibits and case law presented by both CalFed and the Debtor in connection with the value of the subject property on the date the petition was filed and whether CalFed should be surcharged under Bankruptcy Code Section 506(c) for the preservation, protection, enhancement and disposal of CalFed's collateral.

Section 506(c) was intended to codify the existing case law under the Bankruptcy Act of 1898 (the "Act") in regard to surcharging secured creditors *See* H.R.Rep. No. 595, 95th Cong. 1st Sess. 357 (1977); S.Rep. No. 989, 95th Cong. 2d Sess. 68 (1978), reprinted in U.S.Code Cong. and Admin.News 1978, p. 5787. Under the Act, Courts considered four factors before deciding whether to surcharge a secured creditor. The factors were the benefit to the secured creditor, consent to the sale free and clear of liens, the analogous cost of foreclosing in state court, and the existence of a surplus in the proceeds. *See* Savage, *The Secured Claim Holder's Liability for the Costs and Expenses Incurred in Bankruptcy*, 90 Commercial Law Journal 430 (Oct. 1985).

Unfortunately, each of the four factors has its own inherent weaknesses, however, the majority of cases decided under Section 506(c) have de-emphasized the second, third and fourth factors and have concentrated on the benefit which has been conferred upon the secured creditor as a result of the Debtor's expenditures and services. *See In re Loop Hosp. Partnership*, 50 B.R. 565 (Bkrtcy.N.D. Illinois 1985) [The *Loop* court declined to follow *In re Manchester Hides, Inc.*, 32 B.R. 629 (Bkrtcy.Iowa 1983) and *In re Codesco, Inc.*, 18 B.R. 225 (Bkrtcy.S.D. N.Y.1982) and held that attorney's fees for general representation of a debtor may be charged to a secured creditor to the extent which they benefit the secured creditor]; *In re Mount Cranmore Tennis & Recreation Club, Inc.*, 42 B.R. 598 (Bkrtcy.D.New Hampshire 1984) [secured creditor was benefited by Debtor's efforts to force third party to pay over rent which third party had withheld on basis of lease dispute]; *In re Jim Kelly Ford of Dundee, LTD*. 14 B.R. 812 (Dist.Ct.N.D. Illinois 1980) [secured creditor was surcharged for Debtor's general operating and overhead expenses based upon a factual finding that the creditor's collateral had been liquidated at a premium over that which could reasonably be expected at a forced sale]; *Matter of Stable Mews Associates*, 49 B.R. 395 (Bkrtcy.S.D.N.Y.1985) [while § 506(c) does not expressly refer to commissions, Court found secured creditor should be surcharged to compensate trustee for liquidating creditor's collateral].

A secured creditor must not be "unjustly enriched" by the expenditures and services rendered by a debtor or trustee. On the other hand, a secured creditor cannot be saddled with all of the expenses incurred in connection with the general administration of the estate. *See Gugel v. New Orleans National Bank*, 239 F. 676 (5th Cir.1917) and *Lerner Stores Corporation v. Electric Maid Bake Shops*, 24 F.2d 780 (5th Cir.1928). The decision whether to surcharge under Section 506(c) must be made based upon the proportion of benefit derived by the secured creditor and upon the facts and equities of a particular case. *See generally* 3 *Collier on Bankruptcy* ¶ 506.6 (15th Ed.1985).

The expenditures and services which were allegedly paid and provided for the benefit of the collateral included $158,850.55 paid to discharge the due and delinquent real property taxes which had accrued against the property, $33,487.50 paid to City and State Taxing Authorities for the surtax and documentary stamp tax necessary to transfer the property, $25,604.04 as expenses to insure and maintain the property, managerial and marketing services rendered by Mr. Velikopoljski, which the Debtor asserts has a value of $55,500.00 and $110,793.34 paid as salary to various employees that maintained, operated and collected rents generated from the office building included in the subject property.

In addition to the above expenditures and services, the Debtor expended substantial amounts of time, effort and legal fees to resolve the Lease Dispute with its major tenant. This resolution materially increased the value of the subject property and allowed the property to ultimately be sold.

While it is extremely difficult or impossible to determine the exact proportion of benefit derived by CalFed from the foregoing expenditures and services, the Court must balance the competing interests and reach an equitable resolution. In reaching such a resolution, the Court notes several factors which were pointed out by the parties. Only approximately $75,261.13 of the funds payed to discharge real property taxes were on account of taxes that had accrued at the time this case was initiated. Further, the sum paid for the surtax and documentary stamp tax was based upon the ultimate sale price rather than the value which the Debtor asserts the property had on the date the petition was filed. Additionally, $55,500.00 of the sum sought to be surcharged against CalFed represents a value established by the Debtor for certain managerial and marketing services performed by the president of the Debtor for which he did not receive compensation. Finally, the remainder of the creditors of the estate and the Debtor were also benefited by the expenditures and services which materially increased the value of the property and allowed the property to be sold.

After careful consideration of the respective interests, expenditures and proportionate benefits of CalFed, the Debtor and the remainder of the creditors of the estate, the Court finds and concludes that CalFed shall be surcharged the amount of $150,000.00. Said surcharge shall be deducted from the total amount of interest, attorneys' fees and costs awarded to CalFed [$429,632.41] resulting in a final award to CalFed in the amount of $279,632.51.

### ORDER

Based upon the foregoing findings of fact and conclusions of law, it is hereby:

ORDERED and ADJUDGED that the Debtor shall pay, forthwith, the sum of $279,632.51 to California Federal Savings and Loan Association ("CalFed") which shall be in complete satisfaction of the debt owed to CalFed.