RIDGEMONT APARTMENT ASSOCIATES, LTD.,
Appellant,

v.

ATLANTA ENGLISH VILLAGE, LTD., and Federal Home Loan Mortgage Corporation, Appellees.

Civ. A. No. 1:88–CV–2306–RLV.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 15, 1989.

See also, Bkrtcy., 95 B.R. 247.

Stephen C. Greenberg, Holt Ney Zatcoff & Wasserman, Atlanta, Ga., for Ridgemont Apartments Associates, Ltd.

C. Richard McQueen, Greene Buckley Jones & McQueen, Atlanta, Ga., for Atlanta English Village, Ltd.

Neil C. Gordon, Macey Wilensky Cohen Wittner & Kessler, Atlanta, Ga., for Federal Home Loan Mortg. Corp.

## ORDER

VINING, District Judge.

In this appeal from a final order of the United States Bankruptcy Court for the Northern District of Georgia, the appellant-debtor raises five grounds for reversal or remand. First, the appellant argues that the bankruptcy court erred in concluding that the debtor has no equity in the property which secures the debtor's indebtedness to the appellees without making a specific finding as to the value of the property. Second, the appellant argues that the court's conclusion that the debtor has no equity in the property was erroneous. Third, the appellant contends that the Bankruptcy court erred in ruling that Atlanta English Village, Ltd., ("AEV"), an undersecured second priority creditor, was entitled to adequate protection payments. Fourth, the appellant argues that the bankruptcy court erred in requiring payments to AEV pursuant to 11 U.S.C. § 361(1) because the evidence was insufficient to show that the automatic stay under 11 U.S.C. § 362 had resulted in a decrease in the value of AEV's interest in the debtor's property. Fifth, in conjunction with its fourth enumeration of error, the appellant contends that the bankruptcy court erred in failing to make any finding regarding the effect of the automatic stay on the value of AEV's interest in the debtor's property.

## I. FACTUAL BACKGROUND

The appellant, Ridgemont Apartment Associates, Ltd., a New Jersey limited partnership ("the Debtor"), is the owner of an apartment complex located in Atlanta, Fulton County, Georgia ("the Property"). The Debtor purchased the Property from AEV in December 1984. As part of the purchase price, the Debtor gave AEV a non-recourse wrap-around promissory note in the original principal amount of $9,800,000.00 together with a security deed and a collateral assignment of rents. The obligation evidenced and secured by the described loan documents is hereinafter referred to as the "AEV indebtedness".

When the property was purchased by the Debtor, it was already encumbered by a security deed and collateral assignment of rents given as security for the repayment of a non-recourse promissory note in the original principal amount of $6,000,000 from AEV to First Federal Savings and Loan Association of Warner Robbins, Georgia. This indebtedness is now held by the Federal Home Loan Mortgage Corporation ("FHLMC"). The FHLMC indebtedness bears interest at the rate of 13.635% per annum and prohibits prepayment prior to December 1, 1988. Upon default, the FHLMC loan documents prescribe a default interest rate of 14.635% per annum and late charges equal to 5% of each defaulted payment. The obligation evidenced and secured by the described loan documents is hereinafter referred to as the "FHLMC indebtedness".

The FHLMC indebtedness is payable in monthly installments in the amount of $69,362.57 due on the first of each month. Interest on the AEV indebtedness accrues at a rate of 9% per annum, or $73,500 per 30–day month. However, during the first six years of the AEV indebtedness, the monthly installments are less than the interest actually accruing each month. From January 20, 1987, through December 20, 1990, the AEV indebtedness is payable in monthly interest-only installments of $69,416.67, payable on the 20th of each month. The payment schedule of the AEV indebtedness was structured so that the monthly payments from the Debtor to AEV would be received 10 days prior to the date that the monthly payment due to FHLMC from AEV was to be paid.

Ridgemont defaulted on the AEV indebtedness by failing to make the payment due on March 20, 1988. On April 1, 1988, Ridgemont filed its voluntary petition under chapter 11 of the Bankruptcy Code thereby commencing this bankruptcy case. Pursuant to 11 U.S.C. § 362(a), AEV was automatically stayed from pursuing its rights under its security instruments. On April 27, 1988, AEV filed in the bankruptcy case a motion for relief from the automatic stay or in the alternative for adequate protection and for an order prohibiting the Debtor's use of cash collateral and requiring an accounting of cash collateral.

An evidentiary hearing on AEV's motion commenced on June 6, 1988. As of the hearing date, the Debtor was in default on its payments due to AEV on March 20, April 20, and May 20, 1988. AEV was in default on its payments due to FHLMC on April 1, May 1, and June 1, 1988. The evidence introduced at the hearing show that, at the time of the hearing, $10,342,-951.67 was the total amount due and payable to AEV (without regard to default interest rate).[1] The amount due and payable through June 1, 1988, pursuant to the terms of the FHLMC indebtedness (without regard to default interest rate) was approximately $6,131,911.00.[2] In addition to the secured indebtedness of AEV and FHLMC, the Property was encumbered by a tax lien held by Fulton County, Georgia, securing unpaid ad valorem real property taxes for 1987 in the principal amount of $135,491.37, with interest through June 15, 1988, totalling $10,824.46 and penalties totalling $13,-549.14, resulting in a total 1987 tax claim through June 15, 1988, in the sum of $159,-864.97. By statute, interest on the tax lien accrues at the rate of 1% per month. O.C. G.A. § 48–2–40.

The evidence introduced at the hearing also showed that the monthly net operating income generated by the property was insufficient to meet the property's monthly debt service. The testimony concerning the value of the property was in conflict. The Debtor's appraiser stated a value of $11,900,000. AEV presented two witnesses to establish the value of the property. The first was an estimator who had inspected the property for damage and testified as to the cost of repairs necessary to restore 32 untenantable units in the apartment complex as well as to the cost of structural repair and insect extermination needed throughout the entire complex.

The estimate for all repairs including insect treatment was $444,184.50.

AEV also presented the testimony of an appraiser who concluded that the value of the property would not increase until the repairs listed by AEV's estimator were completed. Given the repair factor, the fluctuating occupancy rate of the complex, and the fact that the rental revenues had been steadily declining over the past three years, the appraiser set a value for the property of $8,900,000.00. The bankruptcy judge did not make a specific finding as to value of the property, but in his order of August 11 stated that "the value of the property is less than the amount of the combined debt against the property held by the holders of the first and second priority security deeds [FHLMC and AEV, respectively]." Additionally, at the hearing the judge stated that he found the value to be no greater than, and probably less than, $10,350,000.00, the average of the appraisals, noting that the weight of the evidence lies in favor of AEV's appraiser "particularly since he's backed up by a detailed inspection by [AEV's estimator], which the debtor's appraiser did not have—all [the debtor's appraiser] did was rely upon an interview with the maintenance manager of the debtor.

Following the hearings conducted on June 6 and June 9, 1988, the bankruptcy court entered its order on June 22, 1988, which ordered that adequate protection be provided to AEV in the form of monthly payments by the Debtor to First Federal of $69,614.67, an amount equal to the payments required under the AEV indebtedness. The June 22 order also directed the Debtor to withhold and deposit into a separate interest bearing escrow account the sum of $11,303.00 per month for prorated ad valorem taxes and required the Debtor to keep all buildings and improvements on

---

1. The total amount due is calculated as follows:

| | |
|---|---|
| Principal | 9,800,000.00 |
| Unpaid Accrued Interest | 522,126.67 |
| Late Charges | 20,825.00 |
| Total | 10,342,951.67 |

(Default interest would add $147,000.00 to the Total)

2. This amount is calculated as follows:

| | |
|---|---|
| Principal | $5,928,000 |
| Accrued but unpaid interest through June 1, 1988 * | 203,911 |
| Total | $6,131,911 |

*includes interest at the rate of 13.635% for three months

the property adequately insured. In the event the property did not generate sufficient net operating income to fund the adequate protection payments ordered by the bankruptcy court, the Debtor would be required to obtain unsecured debt from an entity or entities affiliated with the general partner of the debtor in order that such adequate protection payments be made.

Within the time allowed by law, the debtor appealed the June 22 order. Subsequently, AEV and FHLMC jointly filed a motion pursuant to F.R.Civ.P. 52(b) and 59(e) requesting the bankruptcy court to expand its findings of fact and conclusions of law. By order dated August 11, 1988, the bankruptcy court amended its June 22 order by adding the factual finding that the debtor had no equity in the property and that the value of the property was less than the combined debt against the property held by AEV and FHLMC. The bankruptcy court also added the legal conclusion that because there was no equity cushion to adequately protect AEV's interest in the property, AEV was entitled to the adequate protection provisions of the June 22 order to prevent the undersecured position of AEV from further eroding. The bankruptcy court stated that such periodic payments as adequate protection were authorized by 11 U.S.C. § 361(1) to prevent AEV's interest in the property from decreasing in value. The August 11 order explained that the payments were not compensation for the "use value" of the collateral or for lost opportunity costs resulting from the delay in foreclosure caused by the stay, since a creditor in AEV's position would not be entitled to receive such compensation. *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

## II. DISCUSSION

The scope of a District Court's appellate review of a bankruptcy court's decision is limited. A finding of fact may not be rejected unless it is "clearly erroneous", i.e., the finding is unsupported by the record or the court after reviewing the entire record is left "with the definite and firm conviction that a mistake had been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Findings concerning adequate protection payments are subject to the "clearly erroneous" standard of review. *In re George Ruggiere Chrysler–Plymouth*, 727 F.2d 1017, 1019 (11th Cir.1984). Legal conclusions of the Bankruptcy Court will be set aside if they are in error.

### A. Bankruptcy Court's Finding That The Debtor Had No Equity In The Property.

In its first enumeration of error the Debtor argues that the bankruptcy court erred in concluding that the Debtor had no equity in the property, because the bankruptcy court failed to make sufficient findings of fact in reaching that conclusion. *See* Bankruptcy Rule 7052 which provides that F.R.Civ.P. 52(a) is applicable in stay relief proceedings. The Debtor specifically cites as error the bankruptcy judge's failure to assign a specific value to the property.

The court finds this argument to be meritless. The court agrees with the Debtor's assertion that the bankruptcy court's findings of fact must be sufficiently comprehensive and pertinent to the issues at hand to provide a basis for meaningful review, i.e., to allow the reviewing court to determine whether the factual basis for the decision is clearly erroneous. The court, however, finds that contrary to the Debtor's position the bankruptcy court did just that. While the court did not assign the property a specific value, the bankruptcy court did conclude that the value was somewhere between $8,900,000, the low estimate, and $10,350,000.00, the average of the high and low estimate. No matter where the specific value of the property fell within this range, the debt against the property would far exceed its value.

Additionally, the court finds that bankruptcy judge's conclusion setting a value range as opposed to a specific amount, given the conflicting testimony of the appraisers, was supported by substantial evidence. Credibility choices should rarely if

ever be set aside. Furthermore, the combined testimony of AEV's appraiser and estimator and the documentary evidence introduced at trial provide substantial evidentiary support for the judge's conclusion that the weight of the appraisal evidence lay in favor of AEV's position and that the value of the property was less than the average of the two appraisals. This court cannot find that the bankruptcy court's finding that the debt encumbering the property exceed the property's value was not supported by substantial evidence or was mistaken. Therefore, the bankruptcy court's finding that the debtor had no equity in the property was not clearly erroneous.

### B. Adequate Protection Payments

In its second enumeration of error the Debtor argues that the adequate protection payments required to be made on behalf of AEV represent prohibited payments of post-petition interest to an unsecured creditor in violation of *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (hereinafter *"Timbers"*), 11 U.S.C. § 506(b), and 11 U.S.C. § 362(d)(1).

■ Under the bankruptcy code, only claims for interest that existed at the date of filing the petition are allowed to be recovered against a debtor. 11 U.S.C. § 502(b). The code specifically disallows claims for unmatured interest. 11 U.S.C. § 502(b)(2). However, in the case of oversecured claims, the oversecured.creditor is allowed post-petition interest to the extent that the claim is secured by property having a value that exceeds the sum of the amount of the allowed secured claim and the reasonable expense of preserving or disposing of the property. 11 U.S.C. § 506(b).

Section 506(b) provides no relief from the automatic stay for undersecured creditors. *Timbers,* 484 U.S. 365, 108 S.Ct. 626. Undersecured creditors may, however, seek relief from the automatic stay under the provisions of 11 U.S.C. § 362 where the creditor's interest in a debtor's property depreciates in value as a result of the stay. Under that section, the court may grant relief from the stay altogether or it may condition the stay upon the debtor providing the afflicted undersecured creditor adequate protection of his interest in the debtor's property. Adequate protection of an interest in property may be provided by periodic cash payments, by an additional or replacement lien, or by such other relief (other than an administrative priority) as will allow the undersecured creditor the "indubitable equivalent" of its interest in the debtor's property. 11 U.S.C. § 361.

■ In *Timbers,* the Supreme Court held that the prohibition of section 506 of the Bankruptcy Code of the payment of post-petition interest on an undersecured claim could not be avoided by employing the adequate protection provisions of section 362(d)(1). In short, an undersecured creditor is not entitled to adequate protection for post-petition interest on its claim. In this case, the debtor argues that the adequate protection payments ordered by the bankruptcy judge are just that—payments of post-petition interest disguised as adequate protection payments.

■ It is undisputed that AEV is an undersecured junior creditor and that FHLMC, the senior lien holder, is clearly oversecured. Since FHLMC is an oversecured creditor, it is entitled to have its post-petition interest accrue to the extent that it is oversecured. FHLMC is oversecured to the extent the property value exceeds the FHLMC indebtedness. As the interest accrues on FHLMC's claim, the indebtedness of FHLMC eats up the "security cushion" and erodes the property interest available to junior creditors such as AEV. In other words, the property is consumed by the accruing interest of the senior lien holder to the detriment of other secured but second priority creditors. To the extent this erosion occurs, the junior creditor's interest in the debtor's property is depreciated.

As noted above, the bankruptcy court found that the debtor had no equity in the property. As a result, in this case, AEV's

interest in the property is diminished each month to the extent of the interest accrued against the property on the FHLMC indebtedness—approximately $69,417.67 per month. Therefore, the bankruptcy court concluded:

> [B]ecause there is no equity cushion to adequately protect AEV's interest in the property, AEV is entitled to be provided with the adequate protection provisions of the June 22, Order, including the monthly payments of the full amount of AEV's debt service *to prevent the undersecured position from further eroding*. Such periodic payments as adequate protection are authorized by 11 U.S.C. § 361(1) *to prevent AEV's interest in the property from further decreasing in value.* (Emphasis added)

The court went on to explain that the payments are not compensation for the "use value" of the collateral or for lost opportunity costs resulting from the delay in foreclosure caused by the stay, which a creditor in AEV's position would not be entitled to receive under the holding of *Timbers.*

The bankruptcy court expressly addressed the limitations placed on adequate protection payments to undersecured creditors. In *Timbers,* the Supreme Court noted that an interest in property "is not adequately protected if the security is depreciating during the term of the stay." 484 U.S. at 380, 108 S.Ct. at 635. Nothing in *Timbers* would prevent adequate protection payments from being made to compensate junior undersecured creditors for the decline in value of the security interest due to the increase in the claim of the senior secured creditor for accruing interest. Payments, such as the ones ordered in this case, are not compensation for the delay in foreclosure or interest on the junior creditor's claim but, in fact, are compensation for an actual erosion in the value of the junior creditor's secured claim. Accordingly, the court finds that the bankruptcy court correctly ordered adequate protection payments in this case in the amount of $69,417.67.

## C. The Debtor's Additional Grounds For Reversal or Remand

██ In addition to the above arguments, the Debtor contends that AEV is not entitled to cash payments pursuant to section 361(1) because the automatic stay had not caused any decrease in the value of AEV's interest in the property. Given the conclusion in the above section that the post-petition interest accruing in favor of the FHLMC indebtedness decreases the value of the property available to satisfy the AEV indebtedness, the Debtor's argument must fail, as the court finds that the stay does in fact erode AEV's interest in the property.

██ The Debtor argues, in the alternative, that if the court finds that AEV is entitled to adequate protection, then the bankruptcy court erred in rejecting the offer of adequate protection made by the Debtor. The bankruptcy court rejected the Debtor's offer as inadequate to protect AEV's undersecured position. The offer proposed that the debtor make payments of approximately $50,000.00 per month. That amount would reflect payment of the FHLMC indebtedness at a rate of 10% per annum as opposed to the contract rate of 13.635%. The debtor argues that the difference in the interest rates would be offset by the 5% per annum increase in the value of the property due to inflation. However, the evidence showed that this inflationary increase was likely to occur only if the repairs noted by AEV's estimator were completed. Additionally, the offer did not reflect the additional priority encumbrance on the property of the 1987 Fulton County tax lien. The offer clearly did not take into account the erosion that AEV's interest in the property suffers by virtue of the continual accrual of interest on the existing senior liens. In view of the foregoing, the bankruptcy court's finding that the debtor's adequate protection proposal did not adequately protect AEV's undersecured position was not clearly erroneous.

## III. CONCLUSION

For all the foregoing reasons, the bankruptcy court's order providing for adequate

protection payments by the debtor for the benefit of AEV is AFFIRMED.

SO ORDERED.