### In re BROOMALL PRINTING CORP., Debtor.

**Bankruptcy No. 87–4–3055–SD.**

United States Bankruptcy Court,
D. Maryland,
at Rockville.

Aug. 19, 1991.

Mark S. Goldstein, Bethesda, Md., for debtor.

J. Paul Mullen, David B.A. Demo, Lord & Whip, P.A., Baltimore, Md., for Rockwell Graphics Systems, Inc.

William R. Feldman, Rockville, Md., for Unsecured Creditors' Committee.

MEMORANDUM OF DECISION LIMITING ROCKWELL'S APPLICATION FOR POSTPETITION INTEREST, ATTORNEYS' FEES AND COSTS FROM SALE PROCEEDS

E. STEPHEN DERBY, Bankruptcy Judge.

The issue for resolution is whether, when a purchase money secured creditor has received postpetition installment payments from a Chapter 11 debtor, and when the tangible collateral is later sold for more than the remaining balance, the aggregate postpetition payments on account of the secured claim must be limited to the amount of the net proceeds realized from the sale of the collateral. The court concludes that the aggregate postpetition payments on a secured claim are limited to the amount of the net proceeds realized from a preconfirmation sale of the collateral. Therefore, the objection of the creditors' committee to the application of the secured creditor for disbursement of full postpetition interest, attorneys' fees and costs will be sustained.

### I. Facts

Rockwell Graphics Systems, Inc. ("Rockwell") has filed an Application for Dis-

bursement of Post–Petition Interest, Attorneys' Fees and Costs from Sale Proceeds. On November 2, 1987 when Debtor filed this Chapter 11 case, the principal balance owed by Debtor to Rockwell on an installment note, secured by a perfected purchase money security interest in a printing press, was $469,208.01. Debtor was one monthly installment payment in default at filing, and the interest portion of that payment—$3,108.50—was also due. Rockwell's collateralized claim at filing was thus $472,316.51.

Although each was late, Debtor made 18 postpetition installment payments of principal and interest to Rockwell, which totaled $136,438.50. The principal component of these payments was $75,149.65, and it reduced Rockwell's outstanding principal balance to $394,058.36. The amount which Rockwell applied to interest postpetition was $61,288.85.

Debtor sold the printing press during administration of this case for $475,000. The proceeds, after bringing monthly payments to Rockwell current, were placed in escrow, subject to the lien of Rockwell as it might thereafter be determined.

Since all parties conceded that at all relevant times the printing press had a fair market value of at least $475,000, and since the principal balance which Debtor owed Rockwell never exceeded $469,208.01 postpetition, Rockwell was at all times fully secured for its principal balance due at filing. Therefore, the court earlier authorized a $332,749.51 distribution from the sale proceeds to Rockwell, calculated by reducing the principal balance at filing ($469,208.01) by the total postpetition payments by Debtor to Rockwell ($136,458.50).

The purchase money installment note payable to Rockwell called for 95 monthly installments of principal and interest due on the 10th of each month. The note provided for a 2% per month penalty rate on late payments; but the penalty rate was never imposed by Rockwell, and it is not part of Rockwell's claim. As part of its secured obligation, Debtor is obligated to pay expenses incurred by Rockwell "... upon default, for reasonable attorneys fees for enforcing Purchaser's obligations,...." Machinery Contract, Para. 1(b).

Rockwell claims it should receive up to an additional $142,250.49 on account of its claims for interest and for reasonable attorneys' fees incurred while pursuing collection of the claim. The cap of $142,250.49 is the difference between the $475,000 sale price of the printing press, its collateral, and the $332,749.51 previously distributed to it from the sale proceeds. Since Rockwell's claim for unpaid interest and attorneys' fees is less than $142,250.49, Rockwell maintains it should be paid in full, notwithstanding that the aggregate payments received by Rockwell postpetition would thereby exceed the $475,000 sale price. Debtor, whose principal has guaranteed the Rockwell loan, does not oppose Rockwell's claim.

Rockwell's claim for unpaid postpetition interest against Debtor, after applying a $28,000 letter of credit posted by Debtor, is $39,512.56. This claim includes interest accrued from settlement of the sales through the payment in full of the principal balance pursuant to the court's prior order. The claim for attorneys' fees is $34,987.43. Accrued but unpaid postpetition interest and attorneys' fees thus aggregate $74,499.99. If Rockwell were to be paid this entire amount, it would have received $543,708 postpetition, which is $68,708 more than the $475,000 selling price of the collateral.

The Unsecured Creditor's Committee ("Committee") objects, relying on the language of 11 U.S.C. § 506(b) which allows an oversecured creditor to recover interest, fees and costs only to the extent the value of the collateral exceeds the claim. The Committee argues that Rockwell is entitled to no more than $5,791.99, i.e. the difference between the value of the collateral determined by its sale price ($475,000) and the principal of the debt recovered postpetition by Rockwell from the Debtor ($469,208.01). The Committee contends that from the remaining $5,791.99 sale proceeds balance, the court may allow distribution for prepetition interest ($3,108.50) and the remainder, i.e. the equity cushion, for postpetition interest ($2,683.49). Because there

are insufficient funds to pay accrued post-petition interest, attorneys' fees should not be paid.

Rockwell was at all material times oversecured as to the amount of its claim for principal and accrued interest on the petition date. The parties dispute, however, the point at which the oversecured amount should be determined and the extent to which postpetition payments should be credited against the amount of Rockwell's secured claim. If Rockwell's position was accepted, then as long as an oversecured claim's equity cushion was sufficient to cover the amount of the interest component of an installment payment when it was due, interest could be collected. Since the analysis would be made independently at the time of each payment, the aggregate of interest payments postpetition could far exceed the equity cushion at various points. By accepting the position of the creditors' committee, all postpetition payments would be aggregated to determine a secured claim's entitlement to interest whenever that determination is made.

The Committee urges that all postpetition payments made by Debtor should be first allocated to principal in order to reduce the amount against which postpetition interest will accrue, while Rockwell argues that it is entitled to allocate the payments in the manner provided for in the contract between the parties. The contract amortizes each payment to interest and applicable principal.

## II. Conclusions

Section 506(b) of the Bankruptcy Code provides that an oversecured creditor is entitled to contractual interest, fees, if reasonable, and costs to the extent that the claim is oversecured.

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section [for costs of preserving and disposing of such property], is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b). A secured creditor may therefore recover interest, fees, and costs from the difference between the amount of its claim and the value of the collateral, namely, the equity cushion. At some point the size of the equity cushion must be determined by determining the value of the collateral and the amount of the claim.

Value in the context of § 506 is a fluid concept. "[V]alue shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a). Section 506 does not specify the time to make such a determination, although § 506(b) does specify that any recovery under § 506(c) is to be subtracted from the value of the collateral. 11 U.S.C. § 506(b). Section 506(c) provides that "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c). A valuation of collateral which is sold, therefore, must necessarily be made at the time of the sale, since the first deductions from the sale proceeds to determine value are the costs of sale. The value of the subject printing press was fixed at $475,000 at the time of the sale by the net sale price.

Other points may also be appropriate for valuing collateral. As this court has previously noted, "the purpose of adequate protection is to assure the secured creditor that it will ultimately realize the value of its [interest in] collateral." *In re Sherwood Square Associates*, 87 B.R. 388, 393 (Bankr.D.Md.1988). The confirmation process requires that "the secured creditor will, as of the effective date of the plan, receive payments equal to the present value of its collateral." *Id.* In the confirmation context, the value of the collateral is determined as of the effective date of the plan so the payments will assure the secured creditor the then present value of its

collateral. 11 U.S.C. § 1129(b)(2)(A)(i)(II). *Accord In re Seip*, 116 B.R. 709 (Bankr. D.Neb.1990). When adequate protection of a secured creditor's interest in collateral is considered during administration of a case, however, the collateral is valued at the time adequate protection is determined. *E.g., In re Lane*, 108 B.R. 6 (Bankr. D.Mass.1989); *Ridgemont Apt. Assoc. v. Atlanta English Vill.*, 110 B.R. 77 (N.D.Ga.1989).

Section 506(b) is susceptible to two different interpretations of the amount of an oversecured creditor's entitlements to postpetition interest and fees. First, § 506(b) may be read to provide that an equity cushion is a condition for receipt of postpetition interest and fees, but not a limit on them. In other words, if an equity cushion in any amount exists on the petition date, the secured party is entitled to full interest and fees provided by the loan agreement. This interpretation would lead to arbitrary results because, for example, a secured creditor with a $5.00 equity cushion would receive full postpetition interest and fees, while a secured creditor with a $5.00 deficiency would get none. Second, however, § 506(b) may be read as a limit on the postpetition interest and fees which may be collected by an oversecured creditor. The limit on postpetition interest and fees which an oversecured creditor may collect is established as the amount of the equity cushion.

The Supreme Court in *United Savings Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) adopted the second interpretation that § 506(b) is a limit on the amount of postpetition interest and fees that may be collected by a secured creditor. In *Timbers* the Supreme Court described the effect of § 506(b) on oversecured creditors while explaining why undersecured creditors are not entitled to postpetition interest.

Even more important for our purposes than § 506's use of terminology is its substantive effect of denying undersecured creditors postpetition interest on their claims—just as it denies *over*secured creditors postpetition interest to

the extent that such interest, when added to the principal amount of the claim, will exceed the value of the collateral. Section 506(b) provides that '[t]o the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim.' (Emphasis added.) Since this provision permits postpetition interest to be paid only out of the 'security cushion,' the undersecured creditor, who has no such cushion, falls within the general rule disallowing postpetition interest. See 11 U.S.C. § 502(b)(2).

484 U.S. at 372–73, 108 S.Ct. at 630–31.

 Since § 506(b) acts as a limit on postpetition interest and fees which may be collected by an oversecured creditor, the amount which Rockwell may collect in this case on account of its secured claim is limited in the aggregate to $475,000. This is the amount realized from the sale of its collateral. Rockwell's claim at filing was $472,316.51, including accrued prepetition interest. By agreement of the parties, it was oversecured because its collateral, a printing press, had a fair market value of at least $475,000 at filing. However, Rockwell did not seek an adequate protection order to protect whatever greater value, if any, its collateral may have had at that time. The collateral value which is material to a determination of Rockwell's equity cushion from which it may collect interest and fees is therefore its selling price of $475,000. Since Rockwell has already collected $469,208.01, the court will order that it be paid an additional $5,791.99 from the sale proceeds to satisfy first, accrued prepetition interest ($3,108.50) and, second, postpetition interest limited to the amount of the equity cushion ($2,683.49). Because the amount of postpetition interest which accrued before the principal debt was satisfied exceeded the equity cushion, Rockwell is not entitled to collect attorneys' fees as part of its secured claim. 11 U.S.C. § 506(b).

Consistent with the court's conclusion, in another context, is the case of *Matter of*

*Kain,* 86 B.R. 506 (Bankr.W.D.Mich.1988). In *Kain,* the court ruled that when an undersecured creditor of a Chapter 11 debtor received proceeds from the sale of a portion of its collateral during administration of the case, the payments should be credited to reduce its principal indebtedness. *Id.* at 515. Therefore, at confirmation as of the effective date of the plan, the value of the creditor's remaining additional collateral would determine the amount of the creditor's secured claim to be satisfied under the plan. The balance of the claim would be unsecured. *Id. See also In re Spacek,* 112 B.R. 162 (Bankr.W.D.Tex. 1990) (holding that adequate protection payments made by Chapter 11 Debtor to undersecured creditor must be applied against secured portion of debt and not unsecured portion, where value of collateral had not decreased during the case); *In re Club Assocs.,* 107 B.R. 385 (Bankr. N.D.Ga.1989).

In *In re Hemisphere International Center, Inc.,* 59 B.R. 289 (Bankr.S.D.Fla.1986) the lender was secured by rents due debtor as lessor. Although the bankruptcy court had not determined the value of the lender's collateral, debtor made $60,000 in postpetition payments to the lender pursuant to an adequate protection order. *Id.* at 292. Subsequently, the property was sold and the lender was paid the original principal amount of its debt, less the $60,000 paid as adequate protection. *Id.* The sale price was well in excess of this amount. *Id.* Notwithstanding evidence that the lender was undersecured on the petition date, the court held the lender was entitled to postpetition interest and attorney fees from the remaining excess sales proceeds under § 506. *Id.* at 294. Although *Hemisphere* was a case where the value of the collateral may have increased during administration, it nevertheless affirms the proposition that the proceeds from the postpetition sale of collateral fix the amount a creditor may claim as secured, as well as the creditor's entitlement to postpetition interest and attorney's fees.

In *Mason & Dixon Lines, Inc. v. First Nat'l Bank of Boston,* 86 B.R. 476 (M.D.N.C.1988), *aff'd on other grounds,* 883 F.2d 2 (4th Cir.1989), debtor's confirmed plan of reorganization required that it liquidate whatever collateral was necessary to pay off the bank. The bank was paid $17,000,000 during administration of the case on an $18,144,243 claim, and it applied the payments to attorneys' fees and interest, as well as to reduce principal, pursuant to the terms of the credit agreement between the bank and debtor. *Id.* at 482. As to the debtor's objection to the assumption that the collateral's value exceeded the claim, the court concluded that the amount generated from liquidation of the collateral would control whether the bank was entitled to postpetition attorneys' fees and interest. The court stated:

> If liquidation of all collateral generates less than the sum of the corrected amount of the underlying claim plus the amount already allocated to postpetition costs (which sum should be roughly equal to the bankruptcy court's first determination of the remaining principal balance) then the difference should be returned to Appellants [debtor] from the amount held in escrow by [the bank], subject to [the bank's] successful pursuit of the remaining claims as administrative expenses or unsecured claims.

*Id.* at 484. In other words, if after initially assuming a prepetition claim was fully secured the court later determines it was not, the court simply does not allow the postpetition attorneys' fees and interest. *See In re FCX, Inc.,* 54 B.R. 833, 842 (Bankr. E.D.N.C.1985).

The *Timbers* case further teaches, *inter alia,* that to avoid relief from stay for an undersecured creditor under 11 U.S.C. § 362(d)(2), a debtor must show " . . . that the property is essential for an effective reorganization *that is in prospect.*" 484 U.S. at 376, 108 S.Ct. at 632. The undersecured creditor is protected from inordinate delay because this standard subsumes the requirement that there is a reasonable possibility of a successful reorganization within a reasonable time. This is a flexible standard which requires a less detailed showing in the first four months. *Id.* at 376, 108 S.Ct. at 632. If a debtor allows an

oversecured creditor to become undersecured during administration of a reorganization case, it will place additional pressures of time on the debtor to complete its reorganization.

During the administration of a Chapter 11 case while a debtor is attempting to reorganize, the position of creditor which is oversecured at filing is likely to change. The value of the collateral may depreciate or dissipate and the secured debt may increase through the accrual of interest and costs. Unless addressed, these factors would cause an elimination of the secured creditor's equity cushion. The only issue would be when. See Carlson, *Postpetition Interest Under the Bankruptcy Code*, 43 U. of Miami L.Rev. 577, 636–53 (1989) (examining the impact of time on oversecured creditor's position under various scenarios). Once the equity cushion was eliminated, the oversecured creditor would be undersecured and no longer entitled to a claim for accruing interest. 11 U.S.C. § 506(b).

### III. Summary

█ The court's conclusion, absent special circumstances recognized in an adequate protection order, is that the net proceeds from the preconfirmation, postpetition sale of tangible collateral caps the amount of a secured claim attributable to such collateral. Under § 506(b) a secured creditor is entitled to postpetition interest and attorneys' fees only if, and to the extent that, the proceeds from such sale of the collateral exceed the amount of the claim on the petition date. This rule fairly recognizes the rights of secured and unsecured creditors and debtors under the Bankruptcy Code.

The only collateral values a debtor possesses to pay a secured claim are the proceeds which may be realized from the sale of the collateral. If a debtor pays to a secured creditor more than the proceeds realized from the sale of the collateral, then of necessity the debtor will have made the payments from sources that otherwise would have been available for other creditors or for the debtor's rehabilitation. This result would not constitute equitable treatment of creditors because it would give the unsecured portion of a secured creditor's claim more favorable treatment than other unsecured claims.

During administration of a Chapter 11 case, if the value of an undersecured creditor's collateral increases, the undersecured creditor will benefit and be able to recover a greater percentage of its collateralized claim. If the increased collateral value comes to exceed the amount of the claim on the petition date, the secured creditor may be entitled to some postpetition interest, fees and costs under § 506(b).

If the value of an oversecured creditor's collateral increases, the equity cushion for the oversecured creditor will increase, thus providing greater protection for the secured creditor's claim and a longer period during which the oversecured creditor will be entitled to postpetition interest, fees and costs. When postpetition interest accruals exceed the equity cushion, the oversecured creditor will become undersecured. Although the now undersecured creditor will no longer be entitled to additional postpetition interest above the value of the collateral, the creditor will be protected from excessive and unproductive delay by the burden on the debtor to demonstrate that reorganization is reasonably in prospect, which is the requirement enunciated in the *Timbers* case. *See In re Lane*, 108 B.R. 6, 9 (Bankr.D.Mass.1989).

The claim of a secured creditor is entitled to protection to assure that the holder will ultimately recover the amount of the claim, up to the value of the collateral. *Timbers*, 484 U.S. at 377, 108 S.Ct. at 633; *Sherwood Square*, 87 B.R. at 393. To protect against a decline in collateral value, a secured creditor, whether undersecured or oversecured, is entitled to request adequate protection. 11 U.S.C. §§ 363(e), 362(d)(1), 361. One form of adequate protection specifically recognized by statute is periodic payments to the secured creditor, albeit to the extent the stay, or use of collateral, results in a decrease in the value of the secured creditor's interest in the property. 11 U.S.C. § 361(1). Where a debtor is making satisfactory progress toward a successful reorganization, the debtor may seek to alleviate the time pressure by making payments to an oversecured creditor to delay or prevent

it from becoming undersecured. Such payments might constitute the adequate protection to which a secured creditor is entitled. 11 U.S.C. §§ 362(d)(1), 363(e). However, there is a finite limit, based on the value of the collateral, to the amount of interest, fees and costs that may be paid.

If the adequate protection granted by a court ultimately proves insufficient, then the Bankruptcy Code provides back-up assurance of full recovery of the secured claim consisting of an administrative claim for the deficiency in adequate protection. The adequate protection deficiency claim has priority over all other administrative claims. 11 U.S.C. § 507(b). This back-up protection effectively gives the inadequately protected secured creditor access to all remaining unencumbered assets of a debtor to protect its position. However, the court is not authorized to grant this protection effective retroactively after the collateral has been liquidated and sold, because such retroactive protection would favor the uncollateralized portion of a secured creditor's claim over other unsecured creditors and over the debtor's reorganization efforts. Where the court grants adequate protection prospectively, there is an implicit finding that the protection is adequate and warranted in terms of potential benefit to the reorganization process and ultimately to creditors as a whole by preserving or enhancing on-going asset values.

Because no adequate protection order was entered to protect a higher value for Rockwell's collateral than its sale price, without concluding a higher value could have been established, Rockwell's recovery on its secured claim is limited to the proceeds realized from the sale of its collateral. Accordingly, an order will be entered sustaining the objection of the creditors' committee.

ORDER SUSTAINING UNSECURED CREDITORS' COMMITTEE'S OBJECTION TO ROCKWELL'S APPLICATION FOR DISBURSEMENT OF POST–PETITION INTEREST, ATTORNEYS' FEES AND COSTS FROM SALE PROCEEDS

Upon consideration of Rockwell's Application for Disbursement of Post–Petition Interest, Attorneys' Fees and Costs From Sale Proceeds, the Unsecured Creditors' Committee's opposition thereto, supplemental memoranda of the parties, and Rockwell's Amendment of Application, and for the reasons stated in the accompanying Memorandum of Decision, it is this 19th day of August, 1991, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that the Unsecured Creditors' Committee's objection to Rockwell's application for disbursement of full post-petition interest, attorneys' fees and costs is sustained; and it is further

ORDERED, that Rockwell's recovery on its secured claim is limited to the proceeds realized from the sale of its collateral; and it is further

ORDERED, that Rockwell's application for disbursement is allowed in the reduced amount of $5,791.99 for application to accrued but unpaid interest.